IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMAS NAVARRETTE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OPTIONS RECOVERY SERVICES, et al.,<br><br>　　　　Defendants. | Case No. 22-cv-02156-MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; AFFORDING PLAINTIFF LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

　　　　Before the Court is defendants Options Recovery Services ("Options"), George K.L. Smith ("Smith"), Brianna Herron ("Herron"), and Pamela Thomas's ("Thomas") Motion, filed May 24, 2022, to Dismiss Plaintiff's Complaint.  Plaintiff Tomas Navarrette ("Navarrette") has filed opposition, to which defendants have replied.  Having read and considered the papers filed in support of and in opposition to the instant motion, the Court rules as follows.[1]

## BACKGROUND

　　　　The following factual allegations are taken from the Complaint,[2] and are assumed true for purposes of the instant motion.

　　　　Navarrette, on or about February 4, 2022, "was released after two years of incarceration from Santa Rita Jail . . . on a mental health diversion motion [granted by] Alameda County Superior Court." (See Compl. at 3:19-22.)  Upon release, he was

---

[1] By order filed July 5, 2022, the Court took the matter under submission.

[2] The Complaint consists of three documents, a six-page "Complaint for Violation of Civil Rights (Non-Prisoner Complaint)," a twenty-seven page "Complaint," and a two-page letter.  The citations to "Compl." herein are to the twenty-seven page "Complaint."

"placed" with Options (see Compl. at 3:22-25), which entity subsequently provided him "outpatient services" and was his "housing service provider" (see Compl. at 4:2:5).

Persons residing in housing managed by Options are subject to a 7:00 p.m. curfew. (See Compl. at 6:23-24.) On February 17, 2022, Navarrette, who is a member of the "Moorish Science Temple of America" ("Temple"), submitted to Thomas, Options' Housing Director, a letter from a leader of the Temple requesting Options provide Navarrette a "religious exemption" from the curfew to allow him to attend Friday night services, which were held from 7:30 p.m. to 9:30 p.m., "with the understanding that a member would drive [Navarrette] home to expedite the travel process." (See Compl. at 6:4, 6:24-7:5.) On February 18, 2022, Navarrette was notified by his "house manager," Kelvin Merriman, that "his request for a religious exemption was denied." (See Compl. at 7:6-8.) Options "continued to disallow" Navarrette's attending Friday night services for the remaining period of time he resided at Options. (See Compl. at 7:12-15.)

At the residence provided by Options, Navarrette lived with five "house mates" (see Compl. 7:25-27), and, according to Navarrette, he and his house mates made, at various times, complaints to Thomas and others about the house manager (see Compl. at 8:1-25, 9:12-18). Additionally, Navarrette, on or about March 15, 2022, "scheduled an inspection with The City of Oakland" to address what Navarrette characterizes as "unsafe conditions" at the residence. (See Compl. 8:25-9:3.) Thereafter, Navarrette "sought other housing options" and moved out from Options housing on March 22, 2022. (See Compl. 8:25-27.) Navarrette continued, however, to participate in Option's outpatient services. (See Compl. at 4:2-4.)

On March 31, 2022, Navarrette, who had received an offer for "full time employment," asked Smith, his counselor, to reschedule his outpatient treatment sessions from five days a week in the morning to three days a week in the evening, as such change would allow him to accept the offer. (See Compl. at 10:1-2, 11:26-27.) On April 1, 2022, Herron, Option's Program Director, denied his request, stating her decision was "based on feedback" from Smith. (See Compl. at 11:1-14.)

On April 2, 2022, Navarrette sent Options' Board of Directors an email complaining about the above-referenced house manager, about Thomas, and about what he termed "retaliation." (See Compl. at 12:1-5.) On April 4, 2022, Herron "discharged" Navarrette from Options' outpatient services, stating he was "in a heightened mental health state" and that Options "was not the proper venue for [him]." (See Compl. at 12:5-9.)

Based on the above allegations, Navarrette asserts six causes of action under 42 U.S.C. § 1983, two based on the alleged deprivation of the rights, under federal law, to exercise religious freedom and to be free from retaliation for having engaged in free speech, and the remaining four based on the alleged deprivation of those rights under state law.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be

1  enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.

2  Courts "are not bound to accept as true a legal conclusion couched as a factual

3  allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

As noted, each of Navarrette's claims is brought pursuant to § 1983.

To state a claim under § 1983, a plaintiff must show the defendant deprived him of "a right secured by the federal Constitution or laws of the United States" and that, "in so doing, the [d]efendant acted under color of state law."  See Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000).

In the instant case, defendants, noting they are a private entity and three of its employees, argue the Complaint is subject to dismissal for failure to allege facts sufficient to support a finding that any defendant was acting under color of state law when allegedly engaged in the conduct Navarrette asserts deprived him of his right to exercise religious freedom and his right to be free from retaliation for having engaged in free speech.[3]

"The Supreme Court has articulated four tests for determining whether a private [party's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test."  Franklin v. Fox, 312 F.3d 423, 444–45 (9th Cir. 2002).

Here, defendants contend the Complaint fails to allege facts to establish state action under any of the above four tests.  In response, Navarrette states he is not relying on the joint action and state compulsion tests.  (See Pl.'s Opp. at 5:21-22.)  The Court thus turns to the remaining two tests.

//
//

---

[3] As noted, four of Navarrette's six § 1983 claims are premised on alleged deprivations of rights created by state law.  As further noted, a § 1983 claim must be based on the alleged deprivation of "a right secured by the federal Constitution or laws of the United States."  See id.  As such deficiency is not addressed by defendants, however, the Court does not further address it herein.

**A. Public Function Test**

A private party's conduct constitutes state action under the public function test when the private party is engaged in the exercise of "powers traditionally exclusively reserved to the State." See Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974). A political party's conducting a primary election in which it excluded African-Americans from voting has been held, for example, to constitute state action, see Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978) (noting "conducting elections for public officials" is power traditionally exclusively reserved to the State), whereas a private utility's disconnecting electrical service to a customer without notice has been held not to constitute state action, see Jackson, 419 U.S. at 347, 353 (noting "the supplying of utility service is not traditionally the exclusive prerogative of the State"); see also Flagg Bros., 436 U.S. at 158 (noting, "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State'").

Here, as alleged in the Complaint, Options provides "substance abuse treatment and sober living residential services." (See Compl. at 4:5:8.) Clearly, such services are not services traditionally exclusively reserved to the State and, to the extent Navarrette argues the provision of such services to a person in a diversion program constitutes the exercise of a power traditionally exclusively reserved to the State, the Court is not persuaded. Even assuming Navarrette can be deemed, as he contends, to have been in custody when Options provided him outpatient treatment and/or housing services, numerous courts have held, and this Court agrees, that providing treatment and housing services to persons in constructive custody does not constitute state action. See, e.g., Smith v. Devline, 239 Fed. Appx. 735, 736 (3rd Cir. 2007) (finding "non-profit corporation that provide[d] treatment services to offenders in the criminal justice system to facilitate their successful re-entry into society" was not engaged in state action when it allegedly housed parolee in room without heat and denied him opportunity to leave facility for work); see also Smith v. American Behavioral Health Systems, 2018 WL 4100687, at *7 (E.D. Wash. August 28, 2018) (holding plaintiff, who was "admitted to residential

1  substance abuse treatment" in private center as part of sentence on drug possession
2  charges, failed to show center exercised powers traditionally exclusively reserved to
3  state; citing cases holding "providing residential substance abuse treatment services . . .
4  is not traditionally an exclusive function of the state"); Gaylord v. Clay House, 2020 WL
5  5074189, at *2-3 (E.D. Cal. August 27, 2020) (holding residential manager of "inpatient
6  program" for "post release offenders" who allegedly required plaintiff to "break up" with
7  fiancée as condition of staying in program was not "act[ing] pursuant to an exclusive
8  government function").

**B.  Government Nexus Test**

"The nexus test inquiry asks whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so the action of the latter may be fairly treated as that of the state itself."  Gorenc v. Salt River Project Agricultural Improvement & Power Dist., 869 F.2d 503, 506 (9th Cir. 1989).  A "statewide association incorporated to regulate interscholastic athletic competition among public and private secondary schools" has been held, for example, to engage in state action when it "enforce[d] a rule against a member school," see Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 290, 298 (2001) (citing "pervasive entwinement of public institutions and public officials in [association's] composition and workings"), whereas a private school's termination of an employee has been held not to constitute state action, despite "virtually all of the school's income [being] derived from government funding," see Rendell-Baker v. Kohn, 457 U.S. 830, 840-43 (1982) (noting government played little role in school's personnel decisions and its "fiscal relationship with the State [was] not different from that of many contractors performing services for the government").

Here, Navarrette does not allege any government agency plays in a role in Options' decisions regarding the management of its outpatient or housing services, let alone facts to support a finding that a "pervasive entwinement," see Brentwood Academy, 531 U.S. at 298, exists between any government entity and Options with respect to either

of those services.  Although Navarrette relies on his allegation that Options has a contract with Alameda County to provide the services he received (see Compl. at 4:5-8), as well as his allegations that Options has other contracts with Alameda County and other governmental entities (see Compl. at 4:5-8 (alleging Options has contract with Alameda County to provide substance abuse treatment services at Santa Rita Jail); Compl. at 4:9-10 (alleging Options has contract with State of California to provide substance abuse treatment to state prisoners), "[a]cts of private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."  See Rendell-Baker, 457 U.S. at 841; see also id. at 842 ("That a private entity performs a function which serves the public does not make its acts state action.").

**C. Conclusion Re: Acting Under Color of State Law**

As the Complaint does not include sufficient facts to support a finding that Options or any of the individual defendants was acting under color of state when allegedly engaged in the conduct challenged by Navarrette, the Complaint is subject to dismissal.  The Court will, however, afford Navarrette leave to amend for purposes of curing said deficiency and/or for purposes of alleging any claim(s) that do not require a showing of action under color of state law.  See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (holding "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . the complaint could not be saved by amendment").

**CONCLUSION**

For the reasons stated above, defendants' motion is hereby GRANTED, and the Complaint is hereby DISMISSED, with leave to amend.  A First Amended Complaint, if any, shall be filed no later than August 19, 2022.

//

//

//

1    In light of the above, the Case Management Conference is hereby CONTINUED
2 from August 26, 2022, to December 2, 2022, at 10:30 a.m.  A Joint Case Management
3 Statement shall be filed no later than November 23, 2022.
4    **IT IS SO ORDERED.**

6 Dated: July 27, 2022

　　　　　　　　　　　　　　　　　　MAXINE M. CHESNEY
　　　　　　　　　　　　　　　　　　United States District Judge